UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | |
|---|---|---|
| **JIMMY AMBROSE,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 3:09-cv-182 |
| | ) | (Phillips) |
| **COMCAST CORPORATION,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

This matter is before the court on defendants' Motion to Compel Arbitration and Dismiss Litigation Without Prejudice [Doc. 6]. For the following reasons, defendants' motion [Doc. 6] is **GRANTED**, whereby plaintiff's action is **DISMISSED WITHOUT PREJUDICE**, and the parties are **COMPELLED TO ARBITRATE**.

**I.     BACKGROUND**

The following facts are taken mostly from plaintiff's Response to Defendants' Motion to Compel Arbitration and Dismiss Litigation Without Prejudice [Doc. 13]. Plaintiff is a Comcast Cable, High-Speed Internet, and Digital Voice subscriber. In June and July 2007, Comcast sent plaintiff billing statements that contained a document titled "Arbitration Notice." The first paragraph of the notice states:

> **THIS NOTICE CONTAINS AN IMPORTANT CHANGE TO YOUR CUSTOMER OR SUBSCRIBER AGREEMENT WITH COMCAST (THE "AGREEMENT"). PLEASE NOTE THAT THIS CHANGE TO THE AGREEMENT AS SET FORTH BELOW RESTATES AND SUPERSEDES ANY PREEXISTING PROVISION IN THE AGREEMENT CONCERNING ARBITRATION AND TAKES EFFECT THIRTY (30) DAYS AFTER THIS NOTICE WAS MAILED TO YOU. . . . IF YOU DO NOT OPT OUT OF**

1

**ARBITRATION IN THE MANNER INDICATED ABOVE YOUR CONTINUED USE OF THE SERVICE AFTER THE EFFECTIVE DATE SHALL BE DEEMED TO BE YOUR ACCEPTANCE OF THIS CHANGE. THIS CHANGE MAY HAVE A SUBSTANTIAL IMPACT ON THE WAY IN WHICH YOU OR COMCAST WILL RESOLVE ANY DISPUTE WITH ONE ANOTHER.**

The "arbitration notice" informed plaintiff that he could opt out of the arbitration provision within thirty days. Plaintiff did not opt out of the arbitration provision. Plaintiff states that it is not his practice to "upon receipt of a monthly bill from Comcast (or any other monthly billing statement from any other creditor, such as credit card statements or bank statements) to read the advertisements, junk mail pieces or other non-billing related items which are included in the envelope." [Doc. 13 at 6].

On October 5, 2007, a Comcast technician visited plaintiff's home. During the visit, the technician left a copy of Comcast's terms of service (or "Welcome Kit"), which included an arbitration provision. The arbitration provision was substantially the same as the "arbitration notice" sent in the June/July 2007 billing statements. Likewise, the terms of service notified plaintiff that he had the right to opt out of the arbitration provision. Plaintiff again elected not to opt out of the arbitration provision.

Under the arbitration provision, plaintiff agreed to the following restrictions:

> If you have a Dispute (as defined below) with Comcast that cannot be resolved through the informal dispute resolution process described in this Agreement, you or Comcast may elect to arbitrate that Dispute in accordance with the terms of this Arbitration Provision rather than litigate the Dispute in court. Arbitration means you will have a fair hearing before a neutral arbitrator instead of in a court by a judge or jury.

According to the arbitration provision, "disputes" are to be given the "broadest possible meaning." In addition, plaintiff agreed to waive his right to bring class-action lawsuits, unless the relevant statute provides otherwise.

On April 28, 2009, plaintiff filed suit against defendants. Plaintiff alleges that he was charged for services without his authorization, in violation of the Federal Communications Act of 1934, 47 U.S.C. §§ 201(b), 206 and 207, the Truth-in-Billing Act, 47 C.F.R. § 64.2401, and common law.

On June 19, 2009, defendants filed a Motion to Compel Arbitration [Doc. 6]. Pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*, defendants request the Court to dismiss this action without prejudice, and compel plaintiff to honor the arbitration provision.

The issue before the court is the following: did the parties enter into an enforceable arbitration agreement by virtue of the "arbitration notice" sent in the June/July 2007 billing statements, and the Welcome Kit left with plaintiff in October 2007? For the following reasons, the court finds that the parties entered into an enforceable arbitration agreement. Accordingly, plaintiff's lawsuit is **DISMISSED WITHOUT PREJUDICE**, and plaintiff is **ORDERED** to enter into arbitration to resolve any disputes relating to his relationship with Comcast.

## II. ANALYSIS

Congress has expressed a strong public policy favoring arbitration. In fact, Congress created the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, in order to "reverse the longstanding judicial hostility to arbitration agreements" and to place such agreement on "the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). Arbitration agreements must meet two conditions for the FAA to apply: (1) it must be in writing; and (2) it must be part of "a contract evidencing a transaction involving commerce." 9 U.S.C. § 2. The FAA applies in this case because the arbitration provision was in writing, and it was part of a contract "evidencing a transaction involving commerce."

The FAA "sets forth a fundamental rule regarding enforcement of an arbitration clause: a

written agreement to arbitrate shall be enforceable 'save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Stutler v. T.K. Constructors*, 448 F.3d 343, 345 (6th Cir. 2006) (quoting 9 U.S.C. § 2). This "embodies the national policy favoring arbitration and places arbitration agreements on equal footing with all other contracts." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006). Arbitration agreements are usually enforced because there is a "liberal federal policy favoring arbitration agreement[s]." *Moses H. Cone Mem'l Hosp v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983). As the Sixth Circuit has explained, courts "examine arbitration language in a contract in light of the strong federal policy in favor of arbitration. . . " *Nestle Waters N. Am., Inc. v. Bollman*, 505 F.3d 498, 503 (6th Cir. 2007).

When a party files a motion to compel arbitration, the court must determine whether the arbitration provision is "in issue." "If the district court is satisfied that the agreement to arbitrate is not 'in issue,' it must compel arbitration. If the validity of the agreement to arbitrate is 'in issue,' the court must proceed to a trial to resolve the question. *Great Earth Companies, Inc. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). In order to show that the validity of the agreement is "in issue," the party opposing arbitration- the plaintiff in this case- "must show a genuine issue of material fact as to the validity of the agreement to arbitrate. *Id*. This is similar to the burden imposed on a party opposing a motion for summary judgment. *Id*.

A party opposing a motion to compel arbitration faces a heavy burden once a court determines that the FAA applies. For example, in determining whether an agreement was made, "[c]ourts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. Likewise, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Great Earth Companies, Inc.,* 288 F.3d at 889 (quoting *Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000)).

4

Plaintiff argues that the arbitration provision is not enforceable because there was no "meeting of the minds." Plaintiff argues that he was not presented with an opportunity to read the terms: ". . . there is no reliable . . . evidence that Plaintiff received the arbitration provision or was provided with a meaningful opportunity to read it." [Doc. 13 at 14]. However, Tennessee courts have consistently held that mailing amendments to consumer contracts (which is what the arbitration provision did- it amended the consumer contract) is valid, so long as the "party receiving the terms *has an opportunity to read them* and unconditional right to cancel the contract if he is dissatisfied with the terms." *MDB v. Bellsouth Adver. and Publ'g Corp.*, No. 3:07-cv-126, 2007 WL 27822287, at *3 (E.D. Tenn. Sept. 21, 2007) (emphasis added). This "accept-or-return" policy is valid "*even though the party did not read the contract terms*, sign any documents explicitly containing the contract terms, or know about the contract terms at the time the party entered into the agreement. *Id.* (emphasis added).

Under Tennessee law, it is not necessary that plaintiff actually read the arbitration provision or sign it for there to be a "meeting of the minds." *See Staubach Retail Servs.-Southeast LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 524 (Tenn. 2005) ("[A] written contract is not required to be signed to be binding on the parties."); *T.R. Mills Contractors, Inc. v. WRH Enter., LLC*, 93 S.W.3d 861, 870 (Tenn.Ct.App. 2002) ("[O]therwise binding written contracts need not be signed in order for an arbitration clause contained therein to be enforceable."). In addition the FAA does not require that the arbitration provision be signed by the parties *See Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 978 (6th Cir. 2007) ("[A]rbitration agreements under the FAA need to be written, but not necessarily signed."). Thus, it was not necessary for plaintiff to sign or read the arbitration provision in order for that provision to be enforceable. As the Tennessee Supreme Court has stated, "It will not do, for a man to enter into a contract, and, when called upon to respond to its obligations,

5

to say that he did not read it when he signed it, or did not know what it contained. If this were permitted contracts would not be worth the paper on which they are written."). *Beasley v. Metropolitan Life Ins. Co.*, 229 S.W.2d 146, 148 (Tenn. 1950).

Plaintiff also argues that the arbitration provision is a "contract of adhesion" and thus should not be enforced. To determine whether the parties entered into a valid arbitration agreement, state law governs "generally applicable contract defenses [to an arbitration clause], such as fraud, duress, or unconscionability. *Id*. A contract of adhesion is "a standardized contract form offered to consumers of goods and services on essentially a 'take it or leave it' basis, without affording the consumer a realistic opportunity to bargain and under such conditions that the consumer cannot obtain the desired product or service except by acquiescing to the form of the contract." *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996). The court finds that the arbitration provision was not a "contract of adhesion" because plaintiff was provided with an opportunity to "opt out" of arbitration with no adverse effect on his relationship with Comcast. The 30-day window to "opt out" of arbitration afforded "the consumer [plaintiff] with a realistic opportunity to bargain . . ." *Id*.

Plaintiff also argues that the arbitration provision is unconscionable. Tennessee courts define contracts as unconscionable "when the inequality of the bargain is so manifest as to shock the judgment of a person of common sense, and where the terms are so oppressive that no reasonable person would make them on one hand, and no honest and fair person would accept them on the other." *Trinity Indus., Inc. v. McKinnon Bridge Co.*, 77 S.W. 3d 159, 170-71 (Tenn.Ct.App. 2001). The court finds that the arbitration provision was not unconscionable because it does not "shock the judgment of a person of common sense." *Id*. There is nothing exceptional or unduly harsh about the arbitration provision in this case. This is an ordinary case, where the plaintiff did not read the arbitration provision and is now trying to escape his responsibilities.

Finally, plaintiff argues that the arbitration provision is unconsionable because it waives his right to bring a class-action lawsuit against Comcast. However, the majority of courts, including courts in Tennessee, have rejected this argument. *See Pyburn v. Bill Heard Chevrolet*, 63 S.W. 3d 351, 356 (Tenn. Ct. App. 2001) (holding that a class action waiver did not render an arbitration agreement unenforceable). The majority of federal courts have rejected plaintiff's argument as well. *See Gay v. CreditInform*, 511 F.3d 369, 395 (3d Cir. 2007); *Caley v. Gulstream Aerospace Corp.*, 428 F.3d 1359, 1378 (11th Cir. 2005); *Livington v. Assocs. Fin., Inc.*, 339 F.3d 553, 559 (7th Cir. 2003); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 638 (4th Cir. 2002).

### III. CONCLUSION

Based upon the following, defendants' motion [Doc. 6] is **GRANTED**, whereby plaintiff's action is **DISMISSED WITHOUT PREJUDICE**, and the parties are **COMPELLED TO ARBITRATE**.

**IT IS SO ORDERED**.

**ENTER:**

s/ Thomas W. Phillips
United States District Judge